**FMC CORPORATION, Plaintiff–Appellant,**

v.

**UP–RIGHT, INC. and American Grape Harvesters, Inc., Defendants–Appellees.**

No. 93–1272.

United States Court of Appeals, Federal Circuit.

April 6, 1994.

Raymond P. Niro, Niro, Scavone, Haller & Niro, Chicago, IL, argued for plaintiff-appellant. With him on the brief, was Raymond P. Niro, Jr. Also on the brief, was Richard B. Megley, FMC Corporation, Chicago, IL. Of counsel was, Timothy B. Dyk, Washington, DC.

Bruce H. Johnsonbaugh, Eckhoff, Hoppe, Slick, Mitchell & Anderson, San Francisco, CA, argued, for defendants-appellees. With him on the brief, were James F. Mitchell and Ernest M. Anderson.

1. The district court dismissed American Grape Harvesters, Inc. (American Grape) as a party

Before RICH, MICHEL, and CLEVENGER, Circuit Judges.

RICH, Circuit Judge.

FMC Corporation (FMC)[1] appeals the February 22, 1993, decision of the United States District Court for the Northern District of California, *FMC Corp. v. Up–Right, Inc.*, 816 F.Supp. 1455, 28 USPQ2d 1103 (N.D.Cal.1993), holding that Up–Right, Inc. (Up–Right) did not contributorily infringe claim 1 of U.S. Patent No. 4,286,426 (Orlando patent), owned by FMC, through its sale of replacement parts for picking heads which are components of grape harvesters covered by claim 1. For the reasons hereinafter stated, we hold that replacement of the worn-out parts in the picking heads at issue in this case did not constitute impermissible reconstruction of the patented grape harvesters, and therefore there was no direct infringement, and thus no contributory infringement; wherefore, we affirm.

## I. Background

A grape harvester is a vehicle which drives along rows of grape vines and shakes the vines to dislodge grapes. The portion of a grape harvester which comes in contact with the vines is referred to as a picking head. Fig. 1 of the Orlando patent, which illustrates a grape harvester in operation, is set forth below together with Fig. 3, which illustrates a picking head in more detail:

defendant pursuant to a confidential settlement agreement.

Fig. 1

Fig. 3

Claim 1 of the Orlando patent, with the numerals in brackets referring to elements illustrated in Figs. 1 and 3, reads as follows:

In a harvesting apparatus [10] that includes a vehicle [11] movable to a position adjacent to the plant to be harvested, said vehicle including a support frame [12], a shaker assembly [22] mounted to said vehicle support frame for shaking the trunk of a plant to dislodge crops therefrom comprising: a shaker frame [32], means [30] connected to said support frame for mounting said shaker frame for pivoting about a single axis that is overhead the plant to be shaken, said shaker frame including first and second frame sections [34, 36] that extend downwardly of said axis of rotation in substantially fixed relation to each other and that terminate in outer ends, striker members [48, 48'] connected to said outer ends in opposing relation, and drive means [includes, *inter alia*, 58, 68, 85a, 86, 87a, 88, 89, 92] separate and distinct from said striker members and being connected thereto only through said shaker frame for oscillating said shaker frame as a single unit about said axis to cause said striker members to alternately impact the opposite sides of the trunk of said plant, said drive means being connected to said striker frame at a height situated generally above said plant.

2. In an Order dated January 8, 1992, the district court held that, under both the settlement agree-

Prior to June 1, 1990, Up–Right manufactured and sold both grape harvesters and rotary pulsator picking heads for use therein, as well as replacement parts for both of these products. On June 1, Up–Right sold its harvester division, including all facilities and inventory, to American Grape. FMC does not sell grape harvesters; rather, FMC sells replacement picking heads for use in grape harvesters such as those previously sold by Up–Right.

There is no dispute that claim 1 reads on the grape harvesters that Up–Right sold prior or to selling its harvester division to American Grape. It is also undisputed that the "shaker assembly" recited in claim 1 reads on the rotary pulsator picking heads found in Up–Right's harvesters.

At the conclusion of prior litigation between the parties, Up–Right was enjoined from further manufacturing its rotary pulsator picking heads. *FMC Corp. v. Up–Right, Inc.*, No. 85 8370 WWS (N.D.Cal. Sept. 15, 1988). In addition, following the liability phase of that litigation, the parties entered into a settlement agreement in which Up–Right agreed not to "reconstruct" any of the rotary pulsator picking heads that it had sold as of settlement. At that time, Up–Right had sold 192 heads.[2] In the decision on

ment and applicable law, the owners of the 192 rotary pulsator picking heads had the right to

appeal, the district court found that, with one or two exceptions, those 192 heads were still in service at the time of its decision.

Following settlement, Up–Right did not sell or manufacture any new rotary pulsator picking heads. However, from the time of settlement until the sale of its harvester division, Up–Right did continue to manufacture and sell replacement parts for the existing 192 heads.[3] Based on these sales, FMC brought this suit alleging that Up–Right had contributed to the impermissible "reconstruction" of the 192 heads, and thus that Up–Right should be held to be a contributory infringer of claim 1 of the Orlando patent pursuant to 35 U.S.C. § 271(c).[4] The district court disagreed, holding that the replacement of worn-out parts in the existing rotary pulsator picking heads constituted permissible repair of the patented grape harvesters, and thus that Up–Right's sale of replacement parts for those heads to the owners of those harvesters did not constitute contributory infringement. From that holding FMC appeals.

## II. Analysis

The district court properly applied the governing law regarding contributory infringement and repair/reconstruction in rendering its decision, and we find no error in the district court's analysis justifying reversal.

### A.

■ At the outset, we note the maxim espoused by the Supreme Court that "there can be no contributory infringement in the absence of a direct infringement." *Aro Mfg. Co. v. Convertible Top Replacement Co., Inc.*, 365 U.S. 336, 341, 81 S.Ct. 599, 602, 5 L.Ed.2d 592 (1961). It necessarily follows that, for Up–Right's sale of replacement parts to owners of the 192 grape harvesters at issue in this case to have constituted contributory infringement, the use of the grape harvesters containing such replacement parts and/or those grape harvesters themselves must have constituted direct infringement. Clearly, that was not the case.

■ It is undisputed that the parts replaced in the rotary pulsator picking heads of the 192 grape harvesters at issue were either worn-out or broken. Indeed, the district court found that the replacement of these parts was due to frequent breakage or wear,[5] and FMC has never contended that any of these replacements were unnecessary. In

---

use, repair, and resell those heads, but that they did not have the right to reconstruct them.

3. The evidence at trial consisted of sales summaries for various replacement parts for picking heads. The summaries were divided into two categories, namely rotary-specific parts, i.e., parts that only find use in rotary pulsator picking heads, and common parts, i.e., parts that can be used in a number of Up–Right products including rotary pulsator picking heads. The district court found, and FMC does not dispute, that the evidence did not pertain to any specific head, but rather to the total sales of such parts into the total population of heads. Because it could not find with any certainty that any particular head did or did not have any of its parts replaced, the district court assumed that all rotary-specific parts were installed in the 192 heads and that some proportion of the common parts found their way into those heads.

4. 35 U.S.C. § 271(c), in relevant part, reads:

(c) Whoever sells a component of a patented machine, manufacture, combination or composition ... constituting a material part of the invention, knowing the same to be especially made or especially for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

5. For example, the district court found that "the rails which strike the vine trunks experience cracking, bending, and wear, as do the C–Arms to which those rails are attached." The court further found that "the elements of the drive linkage experience considerable wear," in so far as the "three geared shafts (two crankshafts and one driveshaft) which transfer force to the rotating weights experience geartooth wear and cracking as a result of repeated cyclical loading, and must be replaced periodically, along with the drive chain." The court also noted that a number of rubber bushings in the support means, referred to as rubber mounts (eight per head) and arm bushings (four per head), also experience wear, and thus are regularly replaced. The district court noted that approximately nine pivot arms and 800 curved picking rods had been sold for use in rotary pulsator picking heads, and that the drive chain had been replaced at least once in each of the 192 heads.

addition, the district court characterized FMC's arguments below as follows:

> FMC doesn't argue that any Rotary Pulsators have in fact ever reached a state where, assessing them as a whole, they have required replacement of a majority of their parts in order to be returned to service.

*FMC,* 816 F.Supp. at 1464, 28 USPQ2d at 1110. FMC does not argue to the contrary in this appeal, and therefore FMC effectively has conceded that each individual instance involving the replacement of one or more parts constituted required repair as opposed to reconstruction.

This case is therefore unquestionably governed by *Aro.* In *Aro,* the Supreme Court noted that the right to use a patented combination, which impliedly attaches upon the sale of a device or apparatus embodying that combination, includes the right to preserve the fitness of that combination for its intended use in so far as that fitness may be affected by wear or breakage. *Aro,* 365 U.S. at 345, 81 S.Ct. at 604. The Supreme Court accordingly held that the "maintenance of the 'use of the whole' of the patented combination through replacement of a spent, unpatented element does not constitute reconstruction." *Id.* Of particular relevance to this case, the Court also held:

> reconstruction of a patented entity, comprised of unpatented elements, is limited to such a true reconstruction of the entity as to "in fact make a whole new article," after the entity, viewed as a whole, has become spent. In order to call the monopoly, conferred by the patent grant, into play for a second time, it must, indeed, be a second creation of the patented device. *Mere replacement of individual unpatented parts, one at a time, whether of the same part repeatedly or different parts successively, is no more than the lawful right of the owner to repair his property.* [Citations omitted.]

*Aro,* 365 U.S. at 346, 81 S.Ct. at 604 (emphasis added).

FMC contended at trial that, although each individual servicing of the 192 heads may have constituted repair, a majority of the elements of the claimed combination were replaced in most or all of the 192 heads over a period of time, and that such a replacement was tantamount to reconstruction. FMC thus argued that the sequential replacement of broken or worn-out parts could, at some point, rise to the level of an impermissible reconstruction. The district court properly noted that such a proposition is directly contrary to the Supreme Court's pronouncement in *Aro* and accordingly found in favor of Up–Right.

As indicated in the preceding excerpt therefrom, the Supreme Court unequivocally held in *Aro* that the mere replacement of broken or worn-out parts, one at a time, whether of the same part repeatedly or of different parts successively, is no more than the lawful right of the owner to repair his property, so long as any single instance of repair does not in and of itself constitute reconstruction.[6] *See also Wilson v. Simpson,* 50 U.S. (9 How.) 114, 128, 13 L.Ed. 66 (1850) ("When the wearing or injury is partial, then repair is restoration, and not reconstruction.... [R]epairing partial injuries, whether they occur from accident or from wear and tear, is only refitting a machine for use. And it is no more than that, though it shall be a replacement of an essential part of a combination."); *Porter v. Farmers Supply Serv., Inc.,* 790 F.2d 882, 885–86, 229 USPQ 814, 816 (Fed.Cir.1986). In this case, FMC does not contend that any single instance of repair by itself constituted reconstruction; that is, FMC does not contend that any particular replacement at any single time was an indication that any particular *grape harvester as a whole* would have been considered "spent." This case therefore does not present us with the more difficult issue of how much repair to a grape harvester made altogether at any single point in time would have risen to the level of reconstruction of a "spent" grape harvester.

---

**6.** By "single instance of repair," we mean where one or more parts are replaced together at the same time as part of the same servicing.

### B.

Because this case falls squarely within the right of the owner of an embodiment of a patented combination to preserve its fitness for use so far as it may be affected by wear or breakage, judgment in favor of Up–Right was justified on this basis alone. The district court acknowledged this fact, yet nonetheless felt obliged out of an "excess of caution" to analyze the facts of this case under FMC's proposed theory that simple repair of broken or worn-out parts over time can rise to the level of reconstruction.

As it does in this appeal, FMC argued to the district court that the correct approach in analyzing whether reconstruction has occurred is to determine how much of the original structure of a patented combination remains each time any repair is carried out. FMC posits that, when the replacement parts added over time dominate the original parts, reconstruction has occurred.[7] In a thoughtful and comprehensive analysis, which we need not address in detail, the district court applied FMC's theory to the facts of this case and concluded that, *even under FMC's theory*, the facts do not support a finding of reconstruction. The court concluded that FMC had failed to establish that a majority of the parts of the patented combination had been replaced in any particular grape harvester. The district court found this to be the case regardless of whether one counted the number of parts in the grape harvester having corresponding elements in the claimed combination without assigning to them any relative values, economic or otherwise, or whether one attempted to assign

such values.[8] FMC has failed to point out any specific errors in the district court's reasoning which would justify reversal even if FMC's proposed successive repair theory were applicable, which it is not.

### C.

FMC primarily complains to this court that the legal standard for determining when the replacement of parts in a patented combination is an infringement through reconstruction, and when it is simply permissible repair, is too amorphous. FMC requests that this court state the standard more clearly in a way that can be understood and applied both by patent owners and potential infringers.

As noted previously, the present case deals only with the sequential repair of a patented device and there are no allegations that any replacement of a part or a set of parts made at any single time by itself constituted reconstruction. The Supreme Court's pronouncement in *Aro* unmistakably informs patent owners and potential infringers that such activity constitutes permissible repair. To the extent that FMC requests us to provide some type of bright-line test for determining whether reconstruction has taken place in those cases where all of the replacement under investigation has taken place at the same time, we decline to do so on the basis that this case does not present us with such a scenario. Moreover, we also note the First Circuit's eloquent reasoning as to why such a bright-line test should be avoided in any event:

---

7. *FMC's approach is not only contrary to Aro,* but it is also unworkable from a practical standpoint. To avoid direct infringement, the owner of a patented machine would be required to evaluate how much of that machine is made up of non-original parts each time the machine is repaired, to keep an eye out for when a majority of the parts of the machine have been replaced. In addition, to avoid allegations of contributory infringement, a party requested to repair a machine or to provide replacement parts for a machine would have to be careful to inquire as to whether the machine is covered by a patent and, if so, to request the repair history of that machine, assuming the owner of the machine even maintained such a repair history, a doubtful assumption.

8. Of course, caution should be exercised in any analysis involving placing values, economic or otherwise, on the elements of a patented combination. *See Dana Corp. v. American Precision Co., Inc.,* 827 F.2d 755, 760, 3 USPQ2d 1852, 1856 (Fed.Cir.1987) (noting that an economic analysis of "spentness" implicitly involves a degree of uncertainty); *Porter,* 790 F.2d at 885, 229 USPQ at 816 (noting that the legal distinction between repair and reconstruction should not be affected by whether the element of the combination that has been replaced is an "essential" or "distinguishing" part of the invention). We commend the district court's attempt to analyze the facts of this case from a variety of angles.

It is impracticable, as well as unwise, to attempt to lay down any rule on this subject, owing to the number and infinite variety of patented inventions. Each case, as it arises, must be decided in the light of all the facts and circumstances presented, and with an intelligent comprehension of the scope, nature, and purpose of the patented invention, and the fair and reasonable intention of the parties. Having clearly in mind the specification and claims of the patent, together with the condition of decay or destruction of the patented device or machine, the question whether its restoration to a sound state was legitimate repair, or a substantial reconstruction or reproduction of the patented invention, should be determined less by definitions or technical rules than by the exercise of sound common sense and an intelligent judgment.

*Goodyear Shoe Machinery Co. v. Jackson,* 112 F. 146, 150 (1st Cir.1901).

## CONCLUSION

For the foregoing reasons, the decision of the district court is

***AFFIRMED.***