**DEVON DISTRIBUTING CORP.**
d/b/a Carpenter Erosion
Control, Plaintiff,

v.

**Arthur E. MINER and A.J. Garrett
& Associates, Inc., Defendants.**

No. 4:02–CV–90518.

United States District Court,
S.D. Iowa,
Central Division.

Aug. 19, 2004.

Rush C. Nigut, Sullivan & Ward PC, Brett J. Trout, Trout PC, Des Moines, IA, for Plaintiff and Counter–Defendant.

Heather L. Palmer, Davis Brown Koehn Shors & Roberts PC, Timothy J. Zarley, Zarley Law Firm PLC, Des Moines, IA, for Defendants.

Kent A. Herink, David A. Tank, Daniel A. Rosenberg, Davis Brown Koehn Shors & Roberts PC, Ronald M. Sotak, Scott R. Kaspar, Zarley Law Firm PLC, Jeffrey L. Goodman, Goodman PC, West Des Moines, IA, for Defendants and Counter–Claimant.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Plaintiff Devon Distributing Corp. d/b/a Carpenter Erosion Control ("Devon") initiated this action on October 8, 2002 and filed an Amended Complaint on March 19, 2003, alleging that Defendants Arthur E. Miner and A.J. Garrett & Associates ("Garrett") had infringed United States Patent No. 5,915,878 ("the '878 patent"), of which Plaintiff is the assignee. Defendants subsequently asserted two counterclaims, one for a declaratory judgment of noninfringement of the '878 patent, and one for a declaratory judgment of invalidity of the '878 patent. Currently before the Court are Plaintiff's Motion for Summary Judgment regarding infringement and invalidity and Defendants' Cross–Motion for Summary Judgment on the Issue of Patent Invalidity. For the reasons explained below, Plaintiff's motion is **granted in part** and **denied in part** and Defendants' cross-motion is **denied.**

## I. BACKGROUND

In January of 1997, Thomas Carpenter applied for a patent for a machine designed to slice through and simultaneously insert silt fence into the soil. Silt fence is a synthetic material installed in and above the ground to impede silt erosion from areas disturbed by construction. In 1999, Defendants purchased a Tommy silt fence machine covered by the '878 patent manufactured by Mr. Carpenter. Subsequent to Defendants' purchase of the silt fence machine, on or about June 29, 1999, the '878 patent was issued and assigned to Plaintiff. Both Plaintiff and Defendants, as part of their business operations, enter into contracts to install silt fence in construction areas.

There is some dispute between the parties as to what transpired with respect to Defendants' care and use of the machine after its purchase. Both Defendant Arthur Miner and his son, Edward Miner, have testified that Defendants were required to make numerous repairs to the Tommy machine that they purchased in 1999. The plastic wheel was replaced because of breakage within the first hour of operation. Numerous other repairs were made, spanning from the time Defendants first purchased the machine all the way through late 2002 and early 2003.

In August, 2002, Mr. Carpenter was driving down a newly constructed highway between Des Moines, Iowa and Marshalltown, Iowa and came across the silt fence machine being operated by Defendants. He pulled off to take some pictures of the machine, noting that "[i]t had quite a few differences than the one that I sold him." Mr. Carpenter was of the opinion that the machine he saw Defendants using in August, 2002 was not the same machine that he had sold Defendants in 1999. At that point, he decided to initiate a patent infringement action against Defendants.

## II. SUMMARY JUDGMENT

### A. The Legal Standard

The fact that the instant action deals with infringement of a patent does not alter the Court's summary judgment analysis. Summary judgment is "as appropriate in a patent case as it is in any other case." *C.R. Bard, Inc. v. Advanced Cardiovascular Systems, Inc.*, 911 F.2d 670, 672 (Fed.Cir.1990) (internal cites omitted). Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if the dispute over it might affect the outcome of the suit under the governing law. *Id.*

The moving party has the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In meeting its burden, the moving party may support his or her motion with affidavits, depositions, answers to interrogatories, and admissions. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate the specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(c), 56(e); *Celotex Corp.*, 477 U.S. at 322–323, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505.

The role of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts University School of Medicine*, 976 F.2d 791, 794 (1st Cir.1992) (citations omitted). In order to survive a motion for summary judgment, the nonmoving party must present enough evidence for a reasonable jury to return a verdict in his or her favor. *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505.

On a motion for summary judgment, the Court is required to "view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences." *United States v. City of Columbia*, 914 F.2d 151, 153 (8th Cir.1990). The Court does not weigh the evidence or make credibility determinations. *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. The Court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *Id.*

### B. Discussion

#### 1. Infringement

In its motion, Plaintiff argues that Defendants have essentially "fabricated a new machine which meets the limitations of the '878 patent." Plaintiff alleges that the silt fence machine used by the Defendants uses a combination of elements which meet "each and every limitation of at least Claim 1 of the '878 patent." Specifically, Plaintiffs contend that the machine the Defendants were using consisted of the following elements: 1) a coulter, 2) a holed wheel journaled to a static panel; and 3) a horizontal support bar engaging the roll of silt fence material. In resistance, Defendants present two alternative arguments. First, Defendants parse the language of claim 1, arguing that the replacement of certain parts that Plaintiff

points to in support of its infringement argument are not in fact the parts described by claim 1. Second, Defendants argue that they have not infringed Claim 1 of the '878 patent because the changes they have made to the machine constitute permissible repair, not infringing reconstruction. Plaintiff counterargues that Defendant's repair argument is nothing but a "red herring" designed to divert the Court's attention, and that no court has ever held that combining all new elements of a claimed invention constitutes permissible repair. Additionally, in its reply brief, Plaintiff advances the theory that Defendants have possessed, at various times, two separate silt fence machines that infringe the '878 patent.

On Plaintiff's motion for summary judgment, the Court need not decide whether the silt fence machine, as utilized by Defendants with certain repairs and replacements, actually infringes the '878 patent because, even if it is found to infringe, there are genuine issues of material fact relating to the repair versus reconstruction issue that preclude summary judgment in favor of Plaintiff and require a trial on the issue of infringement.

### a. Repair vs. Reconstruction

■ In *Aro Manufacturing Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 338–39, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961), the Supreme Court addressed the question of whether the owner of a combination patent, comprised entirely of unpatented elements, has a patent monopoly on the manufacture, sale or use of the several unpatented components of the patented combination. In answering the question in the negative, the Court noted that

> [t]his Court's decisions specifically dealing with whether the replacement of an unpatented part, in a patented combination, that has worn out, been broken or otherwise spent, is permissible 'repair' or infringing 'reconstruction,' have

steadfastly refused to extend the patent monopoly beyond the terms of the grant. *Id.* at 342, 81 S.Ct. 599. The Court emphasized that it is immaterial whether the part that is replaced is an "essential" or "distinguishing" part of the patented combination. "[I]f anything is settled in the patent law, it is that the combination patent covers only the totality of the elements in the claim and that no element, separately viewed, is within the grant." *Id.* at 344, 81 S.Ct. 599. Ultimately, the Court concluded that

> reconstruction of a patented entity, comprised of unpatented elements, is limited to such a true reconstruction of the entity as to 'in fact make a new article,' after the entity, viewed as a whole, has become spent. In order to call the monopoly, conferred by the patent grant, into play for a second time, it must, indeed, be a second creation of the patented entity.
>
> Mere replacement of individual unpatented parts, one at a time, whether of the same part repeatedly or different parts successively, is no more than the lawful right of the owner to repair his property.

*Id.* at 346, 81 S.Ct. 599 (citations omitted).

The Federal Circuit later clarified the importance of the time frame of replacement of unpatented elements of a combination patent in *FMC Corporation v. Up-Right, Inc.*, 21 F.3d 1073 (Fed.Cir.1994). In that case, the Plaintiff argued that the sequential replacement of broken or worn-out parts could, at a certain point, rise to the level of infringing reconstruction. The court found that the district court below "properly noted that such a proposition is directly contrary to the Supreme Court's pronouncement in *Aro*." *Id.* at 1077. The court determined, based in part upon *Aro*, that the successive replacement of parts is permissible repair "so long as any single

instance of repair does not in and of itself constitute reconstruction." *Id.* Significantly, the court explicitly rejected Plaintiff's theory that once the replacement parts dominate the original parts, reconstruction has occurred. *Id.* at 1078.

In a recent case, *Husky Injection Molding Systems Ltd. v. R & D Tool & Engineering Co.*, 291 F.3d 780, 786 (Fed.Cir. 2002), the Federal Circuit reiterated that, in a situation where spent parts are replaced, "[e]ven if the owner sequentially replaces all of the worn-out parts of a patented combination, this sequential replacement does not constitute reconstruction."

Defendants do not deny that many repairs were made to the silt fence machine they purchased in April of 1999. Edward Miner testified that "we would fix stuff . . . all the time on the machine." Arthur Miner testified that the plastic wheel broke and was replaced with a steel wheel within the first hour of operation. Shortly after the wheel broke, Arthur Miner testified that the frame broke. Specifically, one of the side members tore and they "welded it on, fish plated the side of it." The hinged and static panels required replacement as well due to failures that occurred in the first few hours of operation. The coulter apparently fell off repeatedly, so Defendants replaced it with a coulter from a farm plow. Though Defendants acknowledge the many repairs and replacements that were made to the machine, Arthur Miner has testified that these occurred "individually and over the course of time. . . . At no time did A.J. Garrett reconstruct or replace the silt fence machine 'at a single stroke.'"

Viewing the evidence in the light most favorable to Defendants, a reasonable factfinder could conclude that the time frame of Defendants' replacement of parts on the silt fence machine was such that the alterations constituted permissible repair, not replacement.

### b. One Machine vs. Two Machines

There is no question that Defendants have demonstrated a genuine issue of material fact on the Plaintiff's argument that summary judgment is appropriate because Defendants purchased only one machine, yet are—or were at one time—in possession of two different silt fence machines that utilize the teachings of the '878 patent. Plaintiff bases this theory on pictures taken of Defendants' silt fence machine in August of 2002 and in January of 2003. Plaintiff alleges that the pictures demonstrate that Defendants constructed at least two separate infringing devices. Testimony from Thomas Carpenter, however, creates a genuine dispute about the issue of one machine versus two. At his deposition on April 10, 2003, Mr. Carpenter testified to his belief that Defendant Garrett had only one infringing silt fence machine. At the hearing held on Plaintiff's motion for preliminary injunction two weeks later, Carpenter testified that he "think[s] there are two separate machines floating around."

If Carpenter's testimony alone were not enough to create a factual issue on the number of machines in Defendants' possession, both Defendant Arthur Miner and his son, Edward Miner, testified that Defendants had only one silt fence machine utilizing the technology of the '878 patent. Edward Miner testified that repairs were made between August of 2002, the date of the first pictures of the machine, and January of 2003, the date of the second pictures of the machine, but that there was only one machine.

### c. Arthur Miner's Personal Liability

Finally, Plaintiff requests that this Court decide on summary judgment that

Defendant Arthur Miner is personally liable for a violation of 35 U.S.C. § 271(a). As the Court has found that Plaintiff has not carried its burden on summary judgment and there has therefore been no finding of infringement, it would be premature for this Court to make any conclusion about Defendant Miner's personal liability for infringement.

## 2. Invalidity

In its summary judgment motion, Plaintiff requests that the Court dismiss Defendants' invalidity counterclaim because Defendants have provided no evidence as to invalidity. In response, Defendants submitted a Cross Motion for Summary Judgment on the Issue of Patent Invalidity. Defendants argue that the '878 patent is invalid because it fails to enable a person skilled in the art to make and use the patented invention. Specifically, Defendants contend that claim 1 of the '878 patent provides no explanation for the holes in the wheel of the silt fence machine, which Defendants allege are the "novel feature" of the patent.

■] Where the validity of a patent is challenged, the burden is on the party challenging validity to prove, by clear and convincing evidence, a lack of enablement. *Johns Hopkins University v. CellPro, Inc.,* 152 F.3d 1342, 1359 (Fed.Cir.1998). " 'If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.' " *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

■ 35 U.S.C. § 112 requires that a patent specification "shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, ... to make and use the same." To be enabling, the patent specification must teach those

skilled in the art how to make and use the claimed invention without " 'undue experimentation.' " *In re Stephen E. Wright,* 999 F.2d 1557, 1561 (Fed.Cir.1993) (citations omitted). Enablement is determined from the point of view of a person of ordinary skill in the art at the time the patent application was filed. *Ajinomoto Co., Inc. v. Archer–Daniels–Midland Co.,* 228 F.3d 1338, 1345 (Fed.Cir.2000).

■] Claim 1, which Defendants attack as invalid, reads as follows:

> A silt fence machine, attached to a power source, to slice through soil and to insert silt fence material at a predetermined depth and position, the silt fence machine comprising a soil disrupter for slicing through said soil, a mechanical means for inserting silt fence material into said soil, the mechanical means including an axle attaching a wheel to a static panel at a predetermined position *said wheel constructed with holes around its axis to allow the silt fence material to flow by the wheel without bunching up, and to facilitate threading silt fence material through the silt fence machine,* and a support structure for said silt fence material, whereby said silt fence material is inserted into the soil.

(Emphasis added). Defendants claim that the italicized portion of the claim language is not sufficiently detailed to explain how the holes in wheel 68 of the silt fence machine either facilitate threading of the silt fence material or prevent the material from bunching. Significantly, Defendants neither claim nor present any evidence to demonstrate that the holes in wheel 68 fail in their function of facilitating the threading of the silt fence material or preventing bunching; rather, Defendants simply assert that the claim language itself does not spell out how the holes work. Enablement only requires that one skilled in the art be able to make and use the invention without

undue experimentation. There is absolutely no evidence—apart from Defendants' bare assertion—that one skilled in the art would not be able to make and use the invention disclosed in claim 1 of the '878 patent.

■ In their supplemental brief in support of their cross motion, Defendants assert an additional argument, that claim 1 of the '878 patent is invalid because of obviousness. Defendants hinge their obviousness argument on Plaintiff's statement in its reply brief that "[i]t would be obvious, to anyone of ordinary skill in the art, from reading the issued patent 'how the holes in the wheel (68) of the silt fence machine facilitate threading of the silt fence material and prevent material from bunching.'" In response to this, Defendants assert that "[i]f the point of novelty of the '878 patent would be 'obvious' to one skilled in the art, by Plaintiff's own admission, then the '878 patent is invalid under 35 U.S.C. § 103 as well." Defendants' argument fails, however, because Plaintiff asserts that the function of the holes in the wheel of the silt fence machine would be obvious *from reading the issued patent.* 35 U.S.C. § 103 mandates that an invention is obvious if "the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." Plaintiff does not claim that the subject matter as a whole would have been obvious to a person skilled in the art without the aid of the '878 patent; rather, Plaintiff claims that the '878 patent specification does the job of describing the invention in such a way as to make the invention comprehensible to one skilled in the art. This is the purpose of the patent, to disclose an invention that would not previously have been obvious to those with ordinary skill in the art.

The Court concludes that, even examining all evidence in the light most favorable to Defendants, Defendants have failed to demonstrate a genuine issue of material fact on the issue of invalidity. On the undisputed facts in the record, Defendants have not carried the burden of proving that claim 1 of the '878 patent is invalid by clear and convincing evidence. In their cross-motion, Defendants have asserted their belief that even if they are not granted summary judgment on the issue of enablement they are still entitled to present evidence of invalidity at the time of trial. Defendants appear to ignore, however, that Plaintiff's motion for summary judgment included a request that this Court grant summary judgment to Plaintiff on the invalidity issue. In finding that Defendants have failed to carry the burden of proving the invalidity of the '878 patent by clear and convincing evidence, the Court grants summary judgment to Plaintiff on the issue of invalidity. Consequently, the issue of invalidity has been decided and Defendants will not be able to present evidence on the issue at trial.

### 3. Damages

Plaintiff has also asked this Court to grant summary judgment in its favor on the issue of damages. Specifically, Plaintiff asks that the Court find that it is entitled to lost profits in an amount equal to the profits gained by Defendants through use of the allegedly infringing machine. Additionally, Plaintiff argues that it is entitled to treble damages because Defendants' alleged violation of the '878 patent was "willful."

### a. Lost Profits

35 U.S.C. § 284 provides that where a finding of infringement is made, the court "shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." Plaintiff argues that it

is entitled to recover "lost profits" in an amount equal to the profits Defendants gained by using the allegedly infringing machine or machines to install silt fencing material for business customers as a business competitor of Plaintiff.

As an initial matter, the Court notes that the cases that Plaintiff cites in support of its lost profits argument all deal with the lost profits that result where an infringer manufactures and sells the actual infringing product in direct competition with the patent holder. *See Rite–Hite Corp. v. Kelley Company, Inc.,* 56 F.3d 1538, 1545 (Fed.Cir.1995) ("To recover lost profits damages, the patentee must show a reasonable probability that, 'but for' the infringement, it would have *made the sales* that were made by the infringer.") (citations omitted) (emphasis added); *Kaufman Co., Inc. v. Lantech, Inc.,* 926 F.2d 1136, 1141 (Fed.Cir.1991) ("A patentee need not negative every possibility that the purchaser might not have bought another product other than his absent the infringement. Instead, the patentee need only show that there was a reasonable probability that *the sales would have been made* 'but for' the infringement.") (citations omitted) (emphasis added); *Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.,* 761 F.2d 649, 653 (Fed.Cir.1985) ("When a patent holder would have *made the sale of a product* 'but for' the infringement, the award of his lost profits is proper.") (citations omitted) (emphasis added).

Plaintiff has not cited to a single case that contemplates lost profits of the type Plaintiff seeks here; that is, lost profits that do not result from Defendants' sale of an infringing machine, but rather those that result from the Defendants' use of the machine in the ordinary course of their own business. Plaintiff does not argue that but for Defendants' infringement it would have been able to sell, rent, or license more silt fence machines, but rather

argues that if Defendants had not infringed, Plaintiff would have been able to use its own silt fence machines to complete the jobs that Defendants completed with the allegedly infringing machine or machines.

In discussing the issue of lost profits, the Federal Circuit has repeatedly cited to the Supreme Court's decision in *Aro Manufacturing Co. v. Convertible Top Replacement Co., Inc.,* 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964), where the Court expounded on patent infringement damages as follows:

> The question to be asked in determining damages is "how much had the Patent Holder and Licensee suffered by the infringement. And that question [is] primarily: had the Infringer not infringed, what would the Patentee Holder–Licensee have made?"

*Rite–Hite,* 56 F.3d at 1545; *Kori,* 761 F.2d at 653. The *Aro* case itself, however, dealt with the issue of lost profits in the context of sales of the allegedly infringing product by the infringer, and the Federal Circuit has held that, under *Aro,* "the general rule for determining actual damages to a patentee that is itself producing the patented item is to determine the sales and profits lost to the patentee because of the infringement." *Rite–Hite,* 56 F.3d at 1545.

█ This Court finds that Plaintiff is attempting to stretch the concept of lost profits damages further than § 284 intends. There is no case law to support Plaintiff's contention that it should be able to recover damages for work that Defendants performed using the allegedly infringing machine or machines as a business competitor of Plaintiff. Plaintiff comes before this Court seeking damages as a patent holder for patent infringement. Plaintiff's status as an end user of the patented silt fence machines is irrelevant. Plaintiff's infringement allegation is essentially that Defendants utilized one or, at

most, two machines that infringed Plaintiff's patent. The Court finds that in the event a finding of infringement is made, the "lost profits" that could reasonably be supported here are no more than what Plaintiff would have made by selling Defendants an additional machine or machines or by selling Defendants a license to use the allegedly infringing machines. The Court defers an actual calculation of this value until 1) a finding of infringement is made; and 2) evidence is presented on the issue at trial.

### b. Treble Damages

Plaintiff further argues that this Court should award Plaintiff treble damages for Defendants' allegedly willful violation of Plaintiff's patent rights. 35 U.S.C. § 284 provides that once damages have been assessed, a court may increase the amount up to three times the original amount. The Federal Circuit has held that "[t]he paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances." *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed.Cir.1992) (citing *Rite–Hite Corp. v. Kelley Co.*, 819 F.2d 1120, 1124–25 (Fed.Cir.1987)). As the test for damages enhancement requires that a court examine all the facts and circumstances surrounding any ultimate determination of infringement, the Court finds that it would be imprudent and premature at this stage to speculate as to the totality of the circumstances that might impact on an enhancement determination if and when a finding of infringement is made.

### III. ORDER

For the reasons detailed above, summary judgment is hereby granted to Plaintiff on the issue of the alleged invalidity of the '878 patent and Defendants' cross-motion on the issue of invalidity is denied. Further, Plaintiff's motion is denied as it relates to the issues of infringement of the '878 patent and damages.

IT IS SO ORDERED.